1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEBRA BRIGHAM,

11              Plaintiff,                    No. CIV S-09-2770 GGH

12        vs.

13
     MICHAEL J. ASTRUE,
14   Commissioner of
     Social Security,
15
                Defendant.             ORDER
16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB")

19   and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

20   ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the

21   Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed

22   to enter judgment for the Commissioner.

23   BACKGROUND

24              Plaintiff, born December 2, 1957, applied on August 18, 2006 for disability

25   benefits.  (Tr. at 78, 10.)  Plaintiff alleged she was unable to work due to carpal tunnel syndrome,

26   osteoporosis, broken vertebrae, anxiety and agoraphobia.  (Tr. at 109.)  Plaintiff's SSI application

                                              1

was denied initially due to excessive resources, and plaintiff has not sought review of that

decision.  (Id. at 10.)[1]  Thus, the critical dates in this case used to assess disability revolve not

around the date of plaintiff's SSI application, but her eligibility expiration for Social Security

Disability benefits, i.e., December 31, 1996.  In a decision addressing the denial of plaintiff's

DIB application, dated July 25, 2008, ALJ Theodore T. N. Slocum made the following findings:[2]

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 1996.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 31, 1991 through her date last insured of December 31,

---

[1]Nevertheless, plaintiff's counsel remains under the belief that because her client filed an SSI application, all the medical records through the present time are relevant to that application. This is not true.  Because plaintiff has not met the financial eligibility requirements for SSI any question of her disability for purposes of that program is a moot point.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1       1996 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

2    3.    Through the date last insured, the claimant had the
             following medical determinable impairments: carpal tunnel
3            syndrome, back, osteoporosis, tendonitis in both hands,
             wrists, and left leg, bursitis, arthritis, nervous seizures and
4            nervous breakdown, rotator cuff, Reynard's syndrome, pain
             from fingertips to neck, numbness, tingling, and severe
5            migraines, broken spine, post-traumatic stress disorder,
             anxiety, agoraphobia and possible bipolar (20 CFR
6            404.1520(c)).

7    4.    Through the date last insured, the claimant did not have an
             impairment or combination of impairments that
8            significantly limited her ability to perform basic work-
             related activities for 12 consecutive months; therefore, the
9            claimant did not have a severe impairment or combination
             of impairments (20 CFR 404.1521).
10
11   5.    The claimant was not under a disability as defined in the
             Social Security Act, at any time from October 31, 1991, the
12           alleged onset date, through December 31, 1996, the date
             last insured (20 CFR 404.1520(c)).
     6.
13   (Tr. at 12-17.)

14   ISSUES PRESENTED

15           Plaintiff has raised the following issues: A.  Whether the ALJ Erred in Finding

16   that Plaintiff's Impairments did not Meet or Equal the Listings; and B. Whether the ALJ's

17   Finding that Plaintiff was not Credible was not Supported by the Evidence or the Requirements

18   of SSR 96-7p.

19   LEGAL STANDARDS

20           The court reviews the Commissioner's decision to determine whether (1) it is

21   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

22   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

23   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

24   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

25   as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

26   625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

1   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

2   resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

3   omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

4   than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5   ANALYSIS

6       A.  Whether the ALJ Erred in Finding that Plaintiff's Impairments did not Meet or Equal

7   the Listings

8           Plaintiff contends that the ALJ erred in failing to find that she meets or equals

9   listing 12.04, for affective disorders, or 12.06, for anxiety disorders.  She also claims that she

10  meets listing 1.02, 1.04 and 1.06 for "compression factors [sic] of the lower spine and other

11  consequences of osteoporosis and osteopenia."   She further alleges that when these physical

12  impairments are considered in combination with her psychiatric care, the evidence supports a

13  finding of disability prior to December 31, 1996.

14          The undersigned is confused by plaintiff's issue.  The ALJ found that plaintiff did

15  not even satisfy the fairly de minimis "severe" impairment step.  Yet plaintiff bypasses that

16  finding and attacks a finding that was never made by the ALJ at the next step in the sequential

17  analysis, that of the presumed disability Listing of Impairments.  The undersigned cannot

18  adjudicate an issue that was never reached by the ALJ; at best, if plaintiff were to prevail on the

19  severe impairment issue, the case would be remanded for further work-up in the sequential

20  analysis.  See 20 C.F.R. § 404.1520(a)(4).

21          Therefore, the undersigned will construe plaintiff's argument as addressed toward

22  the ALJ's step two finding in which he found that plaintiff had no severe impairments.  (Tr. at

23  12, finding number 4.)

24          At the second step of the disability analysis, an impairment is not severe only if it

25  "would have no more than a minimal effect on an individual's ability to work, even if the

26  individual's age, education, or work experience were specifically considered." SSR 85-28.  The

4

1   purpose of step two is to identify claimants whose medical impairment is so slight that it is

2   unlikely they would be disabled even if age, education, and experience were taken into account.

3   Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis

4   screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th

5   Cir. 1996).  At this step, the ALJ may decline to find a severe impairment *only if the evidence

6   establishes a slight abnormality that has no more than a minimal effect on an individual's ability

7   to work."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

8          First, it should be noted (again) that the only period at issue here is from October

9   31, 1991, when plaintiff claims her disability began, (tr. at 78), to December 31, 1996, her last

10  insured date.  The only medical records in the transcript which pertain to this period are dated

11  April, 1994 to July, 1996, from Kaiser.  (Id. at 489-509.)  The ALJ, in his decision, noted a gap

12  of six months in the medical records during the pertinent period.  Although the ALJ left the

13  record open after the October 4, 2007 hearing until December 18, 2007, to receive these records

14  from plaintiff's counsel, counsel apparently was unable to obtain those records and did not

15  submit them.  (Id. at 17.)  The ALJ concluded that the records before him did not establish

16  disability for a twelve month period.  (Id.)

17         Plaintiff continually refers to records post-dating the pertinent time period as

18  relevant because her application was filed in 2006.  (Pl.'s Mot. at 4:14-17.)  Plaintiff is informed

19  that while medical evidence post-dating the date last insured may be relevant to her pre-

20  expiration condition, they "cannot establish that she was disabled during that period."  Madrigal

21  v. Astrue, 2011 WL 765683, *7 (N.D. Cal. 2011) (*citing* Cox v. Barnhart, 471 F.3d 902, 907 (8th

22  Cir. 2006); Samson v. Chater, 103 F.3d 918, 922 (9th Cir. 1996)).

23         Plaintiff has submitted no argument in support of this claim, other than to

24  summarily state that her osteoporosis and osteopenia along with her mental health treatment for

25  depression and anxiety are amply documented in the extensive medical record.  (Pl.'s Mot. at

26  7:25-8:6.)  Bare contention, unsupported by explanation or authority, may be deemed waived.

1  See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents

2  no explanation in support of claim of error waives issue).  The court will not deem the contention

3  waived, but finds it without merit for the following reasons.

4          The physical ailments pointed out by plaintiff are referred to only within the

5  credibility section of her brief.  (Pl.'s Mot. at 10.)  More importantly, plaintiff cites to records

6  which post-date her date last insured.  See Tr. at 292-96, 284-89, 530 (records dated April, 2005,

7  2004, and September, 2004 to March, 2005).  She then refers to severe falls she suffered in 2006

8  and 2007, citing even later records.  (Pl.'s Mot. at 10-11.)  In her summary section at the

9  conclusion of her brief, plaintiff for the first time refers to physical impairments from July 29,

10  1994, citing Tr. 92-98.  (Id. at 15:11.)  This part of the record is a Vocational Rehabilitation Plan

11  dated July 29, 1994, which contains a short description of plaintiff's injury and medical

12  limitations, with Dr. Jerome Chester's name underneath, presumably approved by him.  It states

13  that plaintiff's date of injury was August 1, 1990, and that as of July 29, 1994, she had left reflex

14  sympathetic dystrophy and bilateral carpal tunnel.  (Id. at 92.)  She was found to be unable to do

15  "repetitive gripping, twisting motions, pinching, grasping, lifting, or carrying with either hand,

16  although the symptoms in her left hand are much more severe than those on the right."  (Id.)

17  This two sentence note is the only evidence of quasi-medical records of any physical ailments

18  prior to 1996, indicating no treatment whatsoever for this ailment.  It is merely a conclusion by

19  the physician, with no supporting records or explanation.

20          The Kaiser records, dated 1994 to 1996, do not include any treatment for physical

21  problems, but only for plaintiff's depression and anxiety.  (Id. at 489-509.)  In fact, one note,

22  dated February 20, 1996, mentioned the vocational rehabilitation training described above;

23  however, in regard to carpal tunnel syndrome, the notes state only that plaintiff was status post

24  surgery.  (Id. at 492.)  On September 29, 1995, plaintiff returned for treatment after an absence of

25  six weeks.  She reported that after attending the pain clinic, she was "cured," and was

26  ////

6

1    "appreciative/grateful re: this extremely positive outcome."  She was able to taper off Buspar.[3]

2    (Id. at 493.)  This report was noted by the ALJ in his findings.  (Id. at 14.)  The remainder of the

3    records are for mental health treatment of plaintiff's depression and anxiety.

4                A past history of carpal tunnel syndrome that may have been cured in 1995 does

5    not qualify as a severe impairment, especially without any direct treating records relating to this

6    condition.  In fact, carpal tunnel syndrome is the only  physical ailment mentioned in any medical

7    records which pre-date December 31, 1996.  Other alleged physical impairments erroneously

8    raised by plaintiff under listings 1.02, 1.04, and 1.06 cannot be considered as severe impairments

9    because there is no evidence that plaintiff had major dysfunction of a joint, disorder of the spine,

10   fracture of the femur, tibia, pelvis, or tarsal bone.

11               In regard to any claim that plaintiff has an affective disorder or anxiety related

12   disorder that qualifies as a severe impairment, the ALJ appropriately analyzed the dearth of

13   evidence provided for the period at issue.  The ALJ acknowledged the diagnoses of major

14   depression and panic attacks.  (Id. at 14.)  By December, 1994, however, plaintiff's condition had

15   improved on medication, and was less anxious and more cheerful.  In addition to plaintiff's

16   report that she was "cured," as of September 29, 1995, the ALJ pointed to plaintiff's

17   improvement with an increased dose of Paxil.  (Id.)  Plaintiff's only other medication at this time

18   was Motrin.  She was not required to be seen again for three months, and then only for follow up

19   care.  As of July 3, 1996, plaintiff was "maintaining stable remission with Paxil."  At this time,

20   plaintiff was active in "re-training for status post carpal tunnel syndrome [surgery].  She is

21   cheerful.  She had no complain[t]s or problems.  She was to follow up in six months."  (Id.)  The

22   Kaiser records support this characterization.  (Id. at 490.)  A stretch of six months between visits

23   indicates very little problem, and certainly not one sufficient to rise to the level of severe

24   impairment.  Furthermore, the ALJ noted that there was a gap in the medical record of almost six

25   _____

26        [3]  Buspar is prescribed for treatment of anxiety disorders.  www.hlm.nih.gov.

1    months, immediately prior to the date last insured of December 31, 1996.  (Id. at 16.)

2           Plaintiff has made no effort to show how her condition qualifies as a severe

3    mental impairment, other than her bare conclusion, and the record supports the ALJ's finding

4    that her anxiety disorder and depression did not qualify as severe impairments at step two.[4]

5           Plaintiff's one sentence assertion that she should be eligible for SSI after May,

6    2007, when her income fell below the relevant SSI income limit, is nothing more than an *ipse*

7    *dixit*.  First, plaintiff has the burden to show she has exhausted this claim, and she has not done

8    so.  Even assuming plaintiff had exhausted the issue, bare assertion, unsupported by explanation

9    or authority, may be deemed waived.  See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502

10   (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue).

11   The undersigned deems this argument waived.

12          B.  Credibility Analysis Was Proper

13          Plaintiff contends that the ALJ did not follow the law in assessing her credibility.

14   She claims that the ALJ's credibility analysis is inadequate because it does not find malingering

15   or give clear and convincing reasons for rejecting plaintiff's testimony and medical evidence.

16          First, plaintiff underestimates the finding that she had no medically determinable

17   severe impairment, a finding that she does not even challenge.  Symptoms are not impairments,

18   rather the symptoms or pain must be related to a found objective (medically determinable)

19   impairment before the credibility analysis is even relevant.  See Lingenfelter v. Astrue, 504 F.3d

20   1028, 1036 (9th Cir. 2007) requiring first the establishment of an objective medical impairment

21   before the credibility analysis begins.

22          Even if the allegation of symptoms or pain could establish an impairment *per se*,

23   the credibility analysis is not deficient.  The ALJ determines whether a disability applicant is

24   _____

25        [4] Plaintiff has attached a list of medications to her brief, and referenced numerous pages
     of medical treatment records; however, none of them concern treatment pre-dating December 31,
     1996.  To the extent that records refer to treatment prior to this date, it is limited to treatment

26   history.  See e.g. Tr. at 223.

credible, and the court defers to the ALJ who used the proper process and provided proper

reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical,

the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74

(9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit

credibility finding to be supported by "a specific, cogent reason for the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first

consider objective medical evidence and then consider other factors.  Vasquez v.  Astrue, 572

F.3d 586, 591 (9th Cir. 2009);  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).

The ALJ may not find subjective complaints incredible solely because objective medical

evidence does not quantify them.  Bunnell at 345-46.  If the record contains objective medical

evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature

of the alleged symptoms, including aggravating factors, medication, treatment, and functional

restrictions.  See Vasquez, 572 F.3d at 591.  The ALJ also may consider the applicant's: (1)

reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily

activities.[5]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61

FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party

testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony

and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792

(9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han

v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that

_____

        [5] Daily activities which consume a substantial part of an applicants day are relevant.
"This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
any way detract from her credibility as to her overall disability.  One does not need to be utterly
incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
(quotation and citation omitted).

1   her impairment "could reasonably have caused some degree of the symptom." Vasquez, 572

2   F.3d at 591, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80

3   F.3d at 1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting

4   applicant testimony must be specific, clear and convincing.  Vasquez, 572 F.3d at 591.

5          Contrary to plaintiff's assertion, there is no requirement of a finding of

6   malingering in order to reject plaintiff's credibility.  (Id.)

7          In any event, plaintiff's credibility was properly questioned for the reasons pointed

8   out by the ALJ.  The ALJ found that plaintiff did not have a severe impairment and thus her

9   statements regarding the extent of her symptoms were inconsistent with this finding.  As

10  previously stated, he noted that the medical evidence indicated that in July, 1996 she was

11  "maintaining stable remission with Paxil."  She had no complaints or problems and was cheerful.

12  (Id. at 16.)  At this time she was actively re-training in follow up to her carpal tunnel syndrome.

13  (Id. at 14.)  The ALJ then noted a gap of six months where there were no medical records just

14  prior to her date last insured.  (Tr. at 16.)  There is also no medical evidence at all until February,

15  2000.  (Id.)  Elsewhere in the findings, the ALJ referred to plaintiff's improvement in September,

16  1995, after attending the pain clinic, and then being absent from it for six weeks.  She reported

17  that she was "cured" and was appreciative.  At that time, plaintiff was able to taper off Buspar.

18  (Id. at 14.)

19         The record supports the ALJ's analysis.  As described in the previous section,

20  there is a dearth of medical records during the period at issue.  The Kaiser records for the pre-

21  1997 period show that although plaintiff was receiving mental health treatment about once a

22  month in 1994, the first date that records are in the transcript, by early 1995, she was seen only

23  every few months, raising the question of how severe could her mental impairment be.  (Id. at

24  489-509.)  Furthermore, her only medication was Paxil and Motrin.  (Id. at 491.)  A condition

25  which can be controlled or corrected by medication is not disabling.  See Montijo v. Secretary of

26  HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed

10

1  not disabling); <u>Odle v. Heckler</u>, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with

2  antibiotics not considered disabling).  Finally, although the motivation of plaintiff's husband may

3  be questioned as they are divorced, there is one treatment note which states that her husband sees

4  her as a hypochondriac.  (<u>Id.</u> at 501.)

5          This court does not take issue with plaintiff's arguments regarding the severity of

6  her condition starting in 1997.  Nevertheless, that time period is not at issue in this case, and

7  cannot be addressed.  Based on the ALJ's analysis of the scant mental health treatment records

8  showing conservative treatment prior to December 31, 1996, the lack of treatment records for a

9  significant period, and plaintiff's improvement near the end of her date last insured period, the

10 ALJ's credibility findings are supported by substantial evidence.

11 <u>CONCLUSION</u>

12          Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is

13 denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is

14 entered for the Commissioner.

15 Dated: August 10, 2011

16              /s/ Gregory G. Hollows
                UNITED STATES MAGISTRATE JUDGE

17

18 GGH/076/Brigham2770.ss2.wpd

19

20

21

22

23

24

25

26